**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| EDUCATION AFFILIATES INC., | * |
| Plaintiff, | * |
|  | *  Civ. No. MJM-24-860 |
| v. | * |
| GREAT AMERICAN INSURANCE COMPANY, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Plaintiff Education Affiliates, Inc. ("Plaintiff") filed this civil action against defendant Great American Insurance Company ("Defendant") alleging breach of contract and bad faith under Md. Code, Cts. & Jud. Proc. § 3-1701, which permits suit prior to administrative action for policies with a limit of liability exceeding $1,000,000.[1] In response, Defendant filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 5. The motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant the motion.

---

[1] Section 3-1701(c)(1) prohibits a party from filing an action for failure to act in good faith until a final decision by the state has been issued, except when the policy at issue contains a limit of liability of $1,000,000 or greater. Md. Code. Ann, Cts. & Jud. Proc. § 3-1701(c)(1).

1

I.  **BACKGROUND**

   A. **Factual Background**

The following facts are drawn from Plaintiff's Complaint (ECF No. 1). This dispute arises from an excess insurance policy (the "Excess Policy") Plaintiff purchased from Defendant effective December 15, 2020. ECF No. 1, ¶ 6. Before issuance of the Excess Policy, Plaintiff obtained a primary insurance policy (the "Primary Policy") from National Union Fire Insurance Company of Pittsburgh ("National Union"). ECF No. 1, ¶ 8; ECF No. 5-2 at 15. The Primary Policy included a Crime Coverage Section that covered losses stemming from employee theft. ECF No. 5-2 at 3, 5. It set forth a $1,000,000.00 Per Occurrence Limit of Liability and a $10,000.00 deductible. *Id.* at 3. The Excess Policy was to be effective for a one-year period beginning on December 15, 2020, and covered losses in excess of the Per Occurrence Limit of Liability in the Primary Policy. ECF No. 1, ¶¶ 6–8.

Plaintiff learned that one of its employees was engaged in an embezzlement scheme that occurred over "several years," causing a loss of $3,274,561.91 and triggering the Crime Coverage Section of the Primary Policy. *Id.* ¶ 10. After Plaintiff submitted its claim under the Primary Policy, National Union covered Plaintiff up to the $1,000,000 limit in that policy. *Id.* ¶ 16. However, Defendant refused to cover the remaining $2,274,561.91 under the Excess Policy. *Id.* ¶ 22.

In the Excess Policy, Defendant agreed to pay Plaintiff for loss that "(a) [w]ould have been paid under the [Primary Policy] but for the fact that such loss exceeds the limit of liability of [National Union], and (b) for which [National Union] has . . . made payment, and [Plaintiff] has collected, the full amount of the expressed limit of [National Union's] liability." ECF No. 1-2 at 1 of 2. The Primary Policy covered "loss that [Plaintiff] sustains resulting directly from an Occurrence taking place during the Policy Period shown in the Declarations, except as provided

in Condition 6(a)(xv) or 6(a)(xvi), which is Discovered by [Plaintiff] during the Policy Period shown in the Declarations, or during the period of time provided in Condition 6(a)(x)[.]" ECF No. 5-2 at 4. The Policy Period shown in the Declarations of the Primary Policy is December 15, 2020, to December 15, 2021. *Id.* at 2.

### B. Relevant Provisions of the Primary Policy

Condition 6(a)(xv) provides conditions under which the Primary Policy will cover loss sustained during a period covered by a prior policy issued by National Union. *Id.* at 5–6. It provides as follows:

> (xv) LOSS SUSTAINED DURING THE PRIOR INSURANCE ISSUED BY [NATIONAL UNION] OR ANY AFFILIATE
>
> (1) Loss Sustained Partly During This Policy And Partly During Prior Insurance
>
> If the **Insured Discovers** Loss during the Policy Period shown in the Declarations resulting directly from an **Occurrence** taking place:
>
> (a) partly during the Policy Period shown in the Declarations and
> (b) partly during any Policy Period of any prior cancelled insurance that [National Union] or any affiliate issued to the **Insured** or any predecessor in interest;
>
> And this **Crime Coverage Section** became effective at the time of cancellation of the prior insurance, [National Union] will first settle the amount of loss that the **Insured** sustained during the Policy Period. [National Union] will then settle the remaining amount of loss that the **Insured** sustained during any Policy Period of the prior insurance.
>
> (2) Loss Sustained Entirely During Prior Insurance
>
> If the **Insured Discovers** loss during the Policy Period shown in the Declarations, resulting directly from an **Occurrence** taking place entirely during any Policy Period of any prior cancelled insurance that [National Union] or any

3

> affiliate issued to the **Insured** or any predecessor in interest, [National Union] will pay for the loss, provided:
>
> > (a) this **Crime Coverage Section** became effective at the time of cancellation of the prior insurance; and
> > (b) the loss would have been covered under this **Crime Coverage Section** had it been in effect at the time of the **Occurrence**.
>
> \* \* \*
>
> (3) In settling loss subject to this Condition:
>
> > (a) The most [National Union] will pay for the entire loss is the highest single Per Occurrence Limit of Liability applicable during the period of loss, whether such limit was written under this **Crime Coverage Section** or was written under the prior insurance issued by [National Union].
> > (b) [National Union] will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this **Crime Coverage Section**. . . .

*Id.* A prior primary policy Plaintiff had with National Union for the period of December 15, 2019, to December 15, 2020, provided a Per Occurrence Limit of Liability of $2,500,000. ECF No. 5-3 at 3.

### C. Procedural History

Plaintiff filed a Complaint against Defendant alleging breach of contract and bad faith. ECF No. 1. Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 5. Plaintiff filed a response in opposition to the motion to dismiss, ECF No. 7, and Defendant filed a reply, ECF No. 10.

### II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy the pleading standard of Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth

of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

Although on a motion to dismiss the Court is generally limited to the facts as alleged in the Complaint, the court may consider "documents that are explicitly incorporated into the complaint by reference," and "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) and Fed. R. Civ. P. 10(c)).

### III.   DISCUSSION

#### A.  Breach of Contract

Defendant seeks dismissal of Plaintiff's breach-of-contract claim for failure to state plausible entitlement to relief. Defendant argues that under the terms of the Excess Policy, Plaintiff must establish that the coverage requirements of the Primary Policy were met before Defendant is liable to provide coverage under the Excess Policy. According to Defendant, Plaintiff cannot establish that the loss at issue here was covered by the terms of the Primary Policy because Plaintiff cannot show that the loss occurred during the relevant one-year policy period.[2] ECF No. 5-1 at 7–8. Defendant also contends that the Excess Policy incorporates a higher limit of liability ($2,500,000) from a prior primary policy that is applicable to losses sustained during the period covered under the prior policy. *Id.* at 9–10. Defendant argues, to trigger excess coverage under the Excess Policy for losses sustained between December 15, 2019, and December 15, 2020, the losses

---

[2] Plaintiff concedes in the Complaint that the theft that caused the loss occurred "[f]or a period of several years." ECF 1, ¶ 10.

had to exceed $2,510,000 (including the $10,000 deductible). *Id.* But, according to Defendant, the Complaint leaves unclear when the losses occurred and therefore fails to establish Plaintiff's entitlement to relief under the Excess Policy. *Id.*

To state a claim for breach of an insurance contract under Maryland law,[3] Plaintiff must allege that "(a) the defendant was under a contractual obligation owed to the plaintiff, which (b) the defendant breached." *John v. Essentia Ins. Co.*, 708 F. Supp. 3d 694, 699 (D. Md. 2023). The ordinary rules of contractual interpretation apply when analyzing the terms of an insurance policy. *Moscarillo v. Prof. Risk Mgmt. Serv., Inc.*, 921 A.3d 245, 251 (Md. 2007). "An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby." *Litz v. State Farm Fire & Cas. Ins. Co.*, 695 A.2d 566, 569 (Md. 1997). Courts will read the document as a whole and analyze "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of the execution." *Id.* (citing *Pacific Indem. v. Interstate Fire & Cas. Ins. Co.*, 488 A.2d 486, 488 (Md. 1985)). The analysis is generally "limited to the four corners of the agreement." *Walton v. Mariner Health of Maryland, Inc.*, 894 A.2d 584, 594 (Md. 2006).

An excess insurer is not "automatically bound by the coverage determinations of the primary policy insurer." *Cristal USA, Inc. v. XL Specialty Ins. Co.*, No. 2494 Sept. Term, 2014, 2017 WL 727795, at *20 (Md. Ct. Spec. App. Feb. 24, 2017). Further, courts applying Maryland law have held that insurance policy provisions like those at issue here do not cover loss that occurred before the stated policy period. *See Gray & Assocs., LLC v. Travelers Cas. & Sur. Co. of Am.*, Civ. No. CCB-07-2216, 2008 WL 822130, at *4 (D. Md. Mar. 25, 2008) ("Commercial crime

---

[3] The Excess Policy at issue here contains a choice of law provision stating that any claims arising out of the contract are governed by Maryland law, and the parties do not dispute that Maryland law applies. ECF No. 1, ¶ 2; ECF No. 5-1 at 6-7.

insurance policies often exhibit features of both occurrence and claims made plans in that losses attributed to criminal acts are generally indemnified if they both occur and are discovered during a stated policy period. ") (citation omitted); *Emcor Grp., Inc. v. Great Am. Ins. Co.*, Civ. No. ELH-12-0142, 2013 WL 1315029, at *17 (D. Md. Mar. 27, 2013), *aff'd*, 636 F. App'x 189 (4th Cir. 2016) (same).

Plaintiff's Complaint fails to plead sufficient facts to push its claims across the line from "possible" to "plausible." *Iqbal*, 556 U.S. at 678. Whether Defendant is liable to provide any coverage claimed in the Complaint depends substantially on when its loss occurred. If, for instance, the entirety of its loss occurred during the Policy Period, under the facts alleged in the Complaint, Defendant would plausibly be liable to cover the entirety of Plaintiff's excess loss. But it is apparent from the Complaint that the loss did not occur entirely within the Policy Period. Indeed, it is possible that none of the loss occurred within the Policy Period. Plaintiff alleges simply that the theft that caused the loss occurred "[f]or a period of several years." ECF 1, ¶ 10.

Whether Defendant is liable to cover any of Plaintiff's loss will depend on how much loss occurred during each particular period of coverage under prior primary policies. The Excess Policy covers losses in excess of the Per Occurrence Limit of Liability in the Primary Policy. ECF No. 1-2 at 1 of 2. That limit on liability is $1,000,000 for losses that occurred and were discovered during the Policy Period of December 15, 2020, to December 15, 2021. ECF No. 5-2. But the Primary Policy accounts for losses that occurred during an earlier period, although discovered during the Policy Period. Under the terms of the Primary Policy, if the loss occurred partly or entirely during an earlier period of coverage, the Per Occurrence Limit of Liability would vary. *See id.* If, for instance, the loss occurred partially within the Policy Period (December 2020 to December 2021) and partly within the earlier period of December 15, 2019, to December 15, 2020, then the limit

on liability applicable to the loss that occurred during the earlier period would the limit prescribed in the National Union primary policy that covered that earlier period, which was $2,500,000. *See* ECF 5-2 (Def. Ex. 2).[4] If the loss was, as the Complaint suggests, spread out over "several years," it is plausible that Defendant is not liable to cover any of it under the Excess Policy because it may be entirely subject to coverage under the Primary Policy. Plainly, the Complaint does not allege the timing of Plaintiff's loss in clear enough terms to state a plausible claim against Defendant.

While the Court recognizes that National Union paid Plaintiff the policy limit under the Primary Policy applicable to crime losses sustained entirely within the Policy Period, under Maryland law, that decision is not binding on Defendant. *See Cristal USA, Inc.*, 2017 WL 727795, at *20. Again, the Complaint alleges that the theft that caused the loss occurred "[f]or a period of several years[,]" ECF 1, ¶ 10, which itself calls National Union's coverage decision into question.

Because Plaintiff failed to plausibly allege that its loss occurred during the relevant coverage period, Defendant's motion to dismiss as to Count I must be granted.

**B. Bad Faith**

A cognizable claim for failure to act in good faith under § 3-1701 of the Courts and Judicial Proceedings Article of the Maryland Code requires a failure by the defendant to make "an informed judgment on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." The plaintiff must show "that it was entitled to coverage under the policy," *Dominant Invs., 113, LLC v. U.S. Liab. Ins. Co.*, 247 F. Supp. 3d. 696, 704 (D. Md. 2017). Because, as explained in Part III.A supra, Plaintiff does not allege

---

[4] The Court finds that it may properly consider the National Union policies attached to Defendant's motion because the Excess Policy refers to the Primary Policy and relevant terms of the Primary Policy refers to earlier National Union policies.

sufficient facts to establish entitlement to coverage under the Excess Policy, its bad faith claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be GRANTED. Plaintiff's Complaint, ECF No. 1, will be dismissed without prejudice.

A separate Order will follow.

 3/31/25 
Date

Matthew J. Maddox
United States District Judge